**Opinion filed January 24, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00228-CV

_____

## IN THE INTEREST OF J.A.W. AND E.M.W., CHILDREN

**On Appeal from the 244th District Court**

**Ector County, Texas**

**Trial Court Cause No. C-3148-PC**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order terminating the parental rights of the mother and father of J.A.W. and E.M.W. The mother voluntarily relinquished her parental rights. The father appeals the termination of his rights and, in a single issue on appeal, challenges the legal and factual sufficiency of the evidence to support termination. We affirm.

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2013). To determine if the evidence is legally sufficient in a parental termination case, we

review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001.

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

In this case, the trial court found that the father had committed four of the acts listed in Section 161.001(1)—those found in subsections (D), (E), (N), and

(O).  Specifically, the trial court found that the father had placed or allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being, had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being, had constructively abandoned the children, and had failed to comply with the necessary provisions of a court order.  The trial court also found, pursuant to Section 161.001(2), that termination of the father's parental rights would be in the best interest of the children.

The record shows that the Department of Family and Protective Services removed five-year-old J.A.W. and three-year-old E.M.W. from the parents' care after attempting family based safety services.  The Department's involvement with the family was a result of two incidents involving the father's neglectful supervision of the children.  On the night of October 2, 2011, Officer Brian Sirmon responded to a disturbance call involving the father, who was "highly intoxicated" and uncooperative with the police.  The father was arrested.  A witness advised the police that the father's children were in another apartment in the same apartment complex without adult supervision.  Officer Sirmon went to that apartment, which was approximately seventy-five yards away from the building where the father was located, and found the children.  They were very young and had been left alone in the apartment, with the apartment door unlocked, in a high crime area for at least a couple of hours.  The father was in no condition to take care of any child.  Because Officer Sirmon could not locate a responsible party to take the children, he called the Department and asked for assistance.  Officer Sirmon was also concerned because there was little or no food in the apartment and because the condition of the apartment posed a risk of danger to the children's health and safety.  An investigator for the Department testified that a similar incident had occurred in

April 2011 when the father was under the influence of alcohol and left the children home alone.

The Department offered services to the parents and attempted to work with them. The children's aunt agreed to be responsible for the children and to supervise the parents' visits with the children. Those arrangements fell through in March 2012, and the mother brought the children to the Department because she was not able to take care of them at that time. The children's aunt confirmed that she did not wish to continue to be the children's voluntary placement/caregiver, and the father informed the Department that he was not in a position to provide for the children. Because no family members were available for suitable placement, the Department removed the children and placed them in foster care.

The conservatorship caseworker, Yesenia Venueva, testified that the father failed to comply with his court-ordered family service plan. Venueva detailed the father's numerous failures to comply with his service plan, including several refusals to submit to drug testing and one positive drug-test result. Venueva believed that it would be in the children's best interest to terminate the father's parental rights and allow the children to remain in their current placement. The children had bonded with their foster mother and had expressed a desire to stay with her. The foster mother had expressed a desire to adopt the children, and the Department recommended that the foster mother be allowed to adopt the children if they became available for adoption. Venueva testified that adoption by the foster mother would be in the children's best interest.

The foster mother testified that she is committed to both boys and wants to adopt them. She testified that J.A.W. has some behavioral issues, including stealing things—which J.A.W. said he learned from his father—and fighting. J.A.W. also has some anger issues that relate to his parents, particularly his father. According to the foster mother, J.A.W. was angry about his parents' actions, angry

that he had lived in a house with drugs, angry that he had not received Christmas presents because his father was drunk, angry that he had missed meals, angry that he had to sleep on the floor at his aunt's house, and angry that his parents had not come for him.

At the time of trial, the father was in jail on a pending charge of child endangerment. The father came to court and testified that he was proud to be the children's father. He said that he had been the children's primary caretaker and "was basically their mother and father." The father explained that, on the night he was arrested, he was not intoxicated but had merely gone to a neighbor's apartment, from which he could clearly see the door to his apartment. According to the father, the children were asleep when he left, and he locked the apartment door. The father also testified that he did not teach J.A.W. to steal. The father conceded that he had not complied with the requirements of his service plan.

Section 161.001(1)(O) does not "make a provision for excuses" for a parent's failure to comply with the family service plan. *In re J.S.*, 291 S.W.3d 60, 67 (Tex. App.—Eastland 2009, no pet.). The Department produced clear and convincing evidence from which the trial court could reasonably have formed a firm belief that the father failed to comply with the provisions of his family service plan as ordered by the trial court. The evidence also showed that the children had been in the Department's care for at least nine months and that the children had been removed from the parents due to abuse or neglect. Thus, we hold that the evidence is legally and factually sufficient to support the trial court's finding under Section 161.001(1)(O). *See id.* Because a finding that a parent committed one of the acts listed in Section 161.001(1)(A)–(T) is all that is required under that statute, we need not address the father's challenges to the sufficiency of the evidence to support the trial court's other findings under Section 161.001(1). *See* TEX. R. APP. P. 47.1.

We also hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of the father's parental rights would be in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the children, the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of the father and of the foster mother, the conduct of the father, the programs available to assist the family, the plans for the children by the Department, the past instability of the father's living arrangements, the stability of the children's current placement, and the father's history of substance abuse, we hold that the evidence is both legally and factually sufficient to support the finding that termination of the father's parental rights is in the best interest of the children. *See id.* The trial court's finding as to best interest is supported by clear and convincing evidence. The father's sole issue on appeal is overruled.

We affirm the trial court's order of termination.


JIM R. WRIGHT

CHIEF JUSTICE


January 24, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

6